### HENRY *et al.* v TAYLOR.

1. The fact that one is an Indian, and during a portion of his childhood probably resided in the family of another Indian, justifies no presumption that the former was an adopted son of the latter.

2. The statement of a witness that he was adopted by a certain other person when a child is of no probative force, in the absence of any pro-

duction of an order of adoption in proceedings under the statute, or any evidence to show that legal steps were taken or the record lost or destroyed.

3. Evidence considered, and held insufficient to show that two certain Indians were ever married, or that they were ever reputed as husband and wife, or that the man ever held the woman out as his wife according to the Indian custom, or in any other manner.

4. The statement of a witness that two Indians were married according to the Indian custom is merely the expression of an opinion, and has no probative force on an issue whether they were so married.

5. In order to show a marriage between two Indians according to the Indian custom, consisting of an agreement to live together, followed by cohabitation, it is necessary to show an express agreement and pursuant cohabitation, which agreement m st be evidenced by words disclosing a meeting of minds, uttered in the present tense, for the purpose of establishing the marriage relation.

6. No presumption of marriage can arise from cohabitation where the relations were illicit in their origin, unless a subsequent mutual marriage contract is shown by competent proof.

(Opinion filed Feb. 4, 1903.)

Appeal from circuit court, Moody county. Hon. J. W. JONES, Judge.

Suit for the partition of real property by John Henry and others against Isaac C. Taylor. From a judgment for defendant, plaintiffs appeal. Affirmed.

*Joe Kirby,* for appellants.

*Aikens & Judge,* for respondent.

FULLER, J. This action for the partition of real property was instituted by John Henry for the use and benefit of his grantee, Joe Kirby, who claims to be the owner of an undivided one half interest in the premises described in the complaint, and which was formerly owned by Charles Henry, an Indian,

who had previously abandoned his tribal relations. Paragraphs 5 and 6 of the complaint are as follows: "That on or about the 11th day of February, 1884, the said Charles Henry died, and left surviving him, as his sole heirs and successors to said real estate aforesaid, one Fannie Henry, his wife, and one John Henry, the son of the said Charles Henry's sister, then deceased, he, the said John Henry, being a nephew of the said Charles Henry; and that prior to the time the said Charles Henry renounced his Indian tribal relations as aforesaid he had duly and legally adopted the said John Henry according to the manners, customs, and laws of the said Indian nation. And that thereupon the said John Henry, his name prior to that time having been John Wells, adopted the name of John Henry, and ever thereafter continued to live in the family of Charles Henry as a member thereof, and was recognized, was treated as, and was the adopted son of the said Charles Henry, now deceased. That upon the death of the said Charles Henry, who died intestate, as aforesaid, the real property passed and became the property of the said John Henry and Fannie Henry, each inheriting and having by operation of law an undivided half thereof." It is alleged in the answer that "Fannie Henry was sole heir of Charles Henry, and that as such she was the owner, by inheritance, of such premises, and that defendant was now such owner, having acquired title by mesne conveyances from her, and that he has had possession of said premises since April 6, 1894." From the evidence the trial court found that through mesne conveyances from Fannie, the surviving widow of Charles Henry, deceased, the defendant is the sole, exclusive, and absolute owner of the premises in fee simple, and "that neither John Hen-

ry, nor his grantee, Thomas Arrow, nor the grantee of said Thomas Arrow, Ira Blewitt, nor the plaintiff Joe Kirby, by reason of the conveyances by them severally executed and received, or from any other source whatsoever, became or ever were possessed of any right, title, or interest of, in, or to the real property in the complaint and hereinbefore described, or to any part, parcel, or portion thereof. That the facts recited in the last preceding finding are based upon the fact that John Henry, the grantor of said Thomas Arrow and Joe Kirby, was not, nor is he, in any manner related to, nor entitled to inherit from, the said Charles Henry, deceased, who died seised as the sole and absolute owner in fee of the real estate and premises hereinbefore described." This appeal is from a judgment accordingly entered and from an order overruling a motion for a new trial.

As appellant's right to recover depends upon the strength of his own title rather than the weakness of respondent's, it is only necessary to determine whether there is competent testimony sufficient to prove that John Henry is the nephew or adopted son of Charles Henry, deceased. The presumption in favor of the trial court must prevail, unless upon review we are satisfied that the evidence clearly preponderates against its decision. Randall v. Burk Township, 4 S. D. 337, 57 N. W. 4; Feldman v. Trumbower, 7 S. D. 408, 64 N. W. 189; Reagan et al. v. McKibben et al., 11 S. D. 270, 76 N. W. 943. Although appellant John Henry is an Indian, and during a portion of his childhood probably resided in the family of Charles Henry, deceased, that fact justifies no presumption that he was an adopted son, and the record contains no competent testimony tending in the slightest degree to prove that he has ever been

legally adopted.   In re Romero's Estate, 75 Cal. 379,   17  Pac.
434.   The best evidence of adoption is  the order  of  the court
made in the proceedings therefor pursuant to statute,  and,  in
the absence of anything to show that any of the required legal
steps were ever taken, or the record thereof has been  lost  or
destroyed, the unexplained statement of  the  witness  that  he
was adopted is but a mere conclusion  without  probative force.
Quinn v. Quinn, 5 S. D. 328, 58 N. W.  808,  49  Am.  St.  Rep.
876; McCollister v. Yard (Iowa) 57 N. W. 447.   A  matter  of
such importance as the adoption of an heir,  which  can  be  ac-
complished only  by  strict  compliance  with  the  statute,  can
never be presumed in  the  absence  of  competent  testimony.
Adoption was unknown to the common law, and,  independent-
ly of statute, there is no such thing as the adoption of an heir.
In re Renton's Estate, 10 Wash.  533, 39 Pac, 145;  Furgeson v.
Jones (Or.) 20 Pac. 842, 3 L. R. A. 620, 11  Am.  St.  Rep.  808;
Tyler v. Reynolds, 53 Iowa, 146, 4 N. W. 902;  Morrison v. Ses-
sions' Estate, 70 Mich. 297, 38 N. W. 249, 14 Am. St.  Rep. 500.
In Ex parte Clark, 87 Cal. 638, 25 Pac. 967, the court announc-
es the universal doctrine as follows:   "The right of adoption is
purely statutory, and unknown to the common law, and re-
pugnant to its principles; and  the  provisions  of  the  statute
must be strictly followed, and every condition prescribed there-
in strictly complied with, else the child  by  adoption cannot in-
herit from the adopting parent."   Were we to  assume  that  a
valid adoption might exist by virtue of the custom of  Indians,
no attempt was made to prove such a custom, and the  irresist-
ible inference is that the child was never adopted.

The statute in force at the time to  which  this  action  re-
lates provides that "Indians  contracting  marriage  according

to the Indian custom, and cohabiting as husband and wife, are lawfully married." Comp. Laws, § 2541. In support of the claim that the Indian Sam Wells married Ahicannonpewin, or Alice Henry, the sister of Charles Henry, deceased, and that their son, the appellant John Henry, was born in lawful wedlock, the latter testified, by way of deposition, that Charles Henry was his uncle, and Sam Wells his father; that he never had a brother or sister; that his father and mother lived together for three or four years prior to 1874, and that he lived with them part of that time. Upon cross-examination he testified: "I could not tell what time of the year 1876 I was born. My mother died in 1884, at Charles Henry's place near Egan. My father was not there at the time my mother died. I do not know for how long a time prior to mother's death it was that father did not live with her. I only heard they lived together about a year and a half before her death. I lived with Charles Henry about two years after her death at my grandmother's place, south of Egan. I don't know her name. Charles Henry lived on his own place at this time. My grandmother died before my mother. I was about seven years old when I went to live in Nebraska, and have lived there ever since. I don't know what name I went by in Moody county. I don't know if I ever went by the name of John Wells there. I was baptized by Mr. Fowler at the Santee agency. I heard that my mother and Charles Henry had different fathers, but the same mother. I don't know if my father and mother were ever married." In the same manner Sam Wells, over a proper objection, testified that he married Alice Henry, the sister of Charles Henry, deceased, according to the Indian custom, some time in the month of July, 1874, and that in the spring of

1875 a son was born to them, who, since his adoption, has been known as John Henry. "Q. After that marriage, did you recognize said Alice Henry as your wife, and was she known and recognized as your wife in the community, and was she known as and called Alice Wells? (No objection was made to this at the taking of the deposition, but at the trial the defendant, Taylor, objected "as incompetent, and calling for a conclusion of the witness without stating facts." Objection overruled, and defendant excepts.) A. Yes, sir; she was.', On cross-examination witness Samuel Wells testified: "I never took any lands in Dakota territory in Flandreau, near Egan. I lived near Flandreau from the last of May until August, 1874. I have visited there, but never lived there since that time. I own lands in Redwood county, Minn., since 1891. Yes, I was present in Dakota territory when my son, John Henry, was born. That was the spring of 1875. I do not know the month. John Wells, David Wells, and William Columbus were present when I married Alice Henry. * * * Yes, sir; I am sure that my son, John Wells now known as John Henry, was born in the spring of 1875, at Flandreau, S. D. Alice Henry or Wells never lived with me in Redwood county, Minn. Q. Have you ever lived with her as your wife from May to August, 1874? A. No. Q. You only lived with your wife, Alice Henry, or Wells, from May to August, 1874? A. That is all the time that I lived with her. I don't know whether Charles Henry and Alice Henry had the same mother. Q. If your son, known as John Henry, swore in this case that you and Alice Henry or Alice Wells lived together for three or four years, did he tell the truth? A. lt was not the truth. I only lived with her from May to August, 1874." From the deposi-

tion of Thomas Arrow it appears that he was acquainted with all these Indians, and, while he was unable to state whether they had severed their tribal relations at the time of the marriage, he states upon direct examination that he was present upon that occasion. To the question, "What was the custom at that time, if you know about the Indians—how did they get married at that time? (Defendant objects as calling for the conclusion of the witness, and the witness has not shown himself competent to testify, and there is no allegation in the pleading that they were full-blooded Indians at that time; no evidence here that they had not severed their tribal relations, no time stated when the marriage took place. Objection overruled. Defendant, Taylor, excepts.) A. By each agreeing to live together. Yes, sir; and going and live together. Yes, sir; that was the way they all did at that time." Although he testifies repeatedly on cross-examination that the marriage occurred in 1875, and that Sam Wells stayed with Alice in the same tepee as his wife, he swears in conclusion that he does not know where the wedding took place, or where they were married, and that he did not see any marriage agreement made. Contrary to this, but also on behalf of appellants, it will be observed that Sam Wells testified that he was married in July, 1874, that he was at Flandreau only from the last of May until August 1st of that year, has never lived there since that time, and that Alice Henry never lived with him in Minnesota. While he testifies that John Henry did not tell the truth when he swore that he and Alice had lived together for three or four years prior to 1874, he swears positively that they cohabited before any pretended marriage had been consummated, during the months of May, June, and an undisclosed portion of July,

up to August 1st, when he returned to .Minnesota, and never lived with her thereafter. Now, their other witness, Thomas Arrow, swears just as positively that they were not married, and that Wells did not live with Alice at all in 1874, but in the summer of 1875, at a time when Wells, if he speaks the truth, was not in the country. According to the undisputed evidence, both Charles Henry and Alice Henry died in the year 1884, and yet the. witnesses for appellant testify that Charles adopted her purported son John in the year 1895. In view of these incongruent statements by the respective witnesses for appellants; and the conflict in their testimony upon substantially every material point, it is practically impossible to discover anything of merit in their entire testimony. There is nothing to indicate that they were ever reputed as husband and wife by those who knew them, or that Sam ever held her out or treated her as his wife, according to the Indian custom or in any other manner. True. the witness Arrow,· before any foundation was laid, and over a valid objection, gave his version of what constituted a marriage by Indian custom; but it is very doubtful, according to his own testimony, whether he was present at the purported marriage, or is in .any manner conversant with what proceedings, if any, took place.

The statement of a witness that certain persons were married according to a particular custom is but the expression of an unwarranted opinion in the nature of a conclusion, and amounts to nothing. Jackson v. Jackson, 80 Md. 176, 30 Atl. 752. Granting that an agreement to live together, followed by cohabitation, constitutes the Indian custom of marriage, it was necessary to prove that Sam and Alice made an express agreement of that character, and actually lived together pur-

suant thereto, and not otherwise. Such a marriage must be evidenced by words disclosing a meeting of the minds, uttered in the present tense for the purpose of establishing the relation of husband and wife, and, until they have lived together as such, the contract is not complete. According to the uncontroverted testimony of Sam, his relations with Alice were illicit in their origin, and, until a mutual contract of marriage is shown by competent proof, the presumption is that such illegal relations continued. Clayton and Wife v. Wardell, 4 N. Y. 230; White v. White, 82 Cal. 427, 23 Pac. 276, 7 L. R. A. 799; Williams v. Williams, 46 Wis. 464, 1 N. W. 98, 32 Am. Rep. 722; Cartwright et al v. McGown, 121 Ill. 388, 12 N. E. 737, 2 Am. St. Rep. 105; State v. Worthingham, 23 Minn. 528; Beneficial Association v. Carpenter, 17 R. I. 720, 24 Atl. 578; Hunt's Appeal, 86 Pa. 294; Cargile et al. v. Wood et al., 63 Mo. 501; Floyd v. Calvert, 53 Miss. 37; McBean v. McBean (Or.) 61 Pac. 418.

In this case there is no evidence, direct or circumstantial, sufficient to constitute legitimate ground for the inference that there was ever a valid marriage between Sam Wells and Alice Henry and the judgment appealed from is affirmed.