AGNEW, Appellant, v. AGNEW, et al, Respondents.

(235 N. W. 644.)

(File No. 7045.   Opinion filed March 10, 1931.)

*Charles P. Warren,* of Huron, *C. H. March,* of Litchfield, Minn., and *C. C. Fritzel* of De Smet, for Appellant.

*Churchill & Benson* and *Max Royhl,* all of Huron, for Respondents.

MISER, C. Ida M. Agnew, hereinafter referred to as petitioner, filed in the county court of Kingsbury county a petition for a family allowance, alleging herself to be the surviving widow and, with her three children, the family of William J. Agnew, decedent. John F. Agnew, brother of decedent and administrator of his estate, answered denying her allegations. On hearing in county court, her petition was denied. On appeal the circuit court reversed the order of the county court and entered judgment awarding the family allowance. Appeal was taken to this court, which reversed the judgment of the circuit court and remanded the case for a new trial. That decision is reported in 52 S. D. 472, 218 N. W. 633, 59 A. L. R. 1549. At the second trial in circuit court, additional evidence, some of which was excluded on the former trial, was admitted. At this second trial it was adjudged that Agnew and petitioner never became husband and wife and that the three children were not heirs at law of decedent. From this judgment and order denying motion for a new trial, petitioner, individually and as guardian of her children, appeals.

Among the facts found by the trial court are the following: William J. Agnew died January 31, 1925. For thirty years prior

thereto he had been a resident of Bancroft, Kingsbury county. He was there engaged in the live stock, elevator, and grain business, and extensive farming operations. He was a county commissioner and, up until the time of his death, was town treasurer. He transacted all business as a single man, including the execution of deeds and mortgages and income tax returns. It was the undivided repute in Bancroft and vicinity that he was a single man.

For ten years prior to January 16, 1915, Ida M. Rusch, known in this record as Ida M. Agnew, petitioner, was also a resident and citizen of Bancroft, where she was engaged in the dressmaking and millinery business. About 1911, Agnew, who was then about fifty years of age, began having illicit relations with petitioner, who was then about twenty-five. On October 1, 1912, she gave birth to one child, and on January 24, 1914, to another. After the birth of her first child and while pregnant with her second, petitioner brought an action against Agnew to recover damages for alleged seduction under promise of marriage, claiming that Agnew was the father of both the born and unborn child. On November 19, 1913, Agnew paid petitioner $6,000 in full settlement of all the claims so alleged. The contract of settlement provided that nothing therein contained should constitute an admission by Agnew of the truthfulness of the matters alleged in the complaint. In the fall of 1914, she became pregnant for the third time. On January 16, 1915, she removed from Bancroft, S. D., to Litchfield, Minn., where, on May 4, 1915, she gave birth to the third child. From January 16, 1915, until after the death of Agnew, she was a resident of Litchfield, at first in a rented house and later in her own house. Shortly after her removal from Bancroft she sold the building in which she had there lived and carried on her dressmaking establishment. When she shipped her household goods to Litchfield, she signed the shipping order as Mrs. Ida Agnew, and thereafter she and her children were known in Litchfield by the name of Agnew. She received letters from Bancroft addressed to her in that name. Agnew himself assisted in getting her established in Litchfield, paid some of the expenses of the family, and visited them at Litchfield occasionally, where petitioner introduced him as her husband. It was, however, the undivided repute at Bancroft that Agnew and petitioner were not married. At Litchfield, there was some repute that petitioner was a married woman, but she was also reputed, among many persons at Litchfield, to be unmarried.

After Agnew's death, she claimed, as his widow, the right of appointment as administratrix of his estate. Upon being paid the sum of $10,500 by Samuel Agnew, a brother of William J. Agnew, she withdrew her objections to the appointment of John F. Agnew as administrator. As part of that settlement she executed a written statement that : "Her relationship to William J. Agnew * * * was never at any time that of his wife either by ceremony or common law marriage." She further stated therein: "That William J. Agnew never at any time, in writing or otherwise, acknowledged the paternity of my children, and I hereby release and waive all claims against him and his estate on account of any relations that may have been maintained between us during his lifetime." The foregoing statement and the receipt for the $10,500 was signed before two reputable witnesses in Huron. On the same day she signed a written withdrawal of her petition for letters of administration and acknowledged the same at DeSmet before the county judge of Kingsbury county. At the time of signing the withdrawal of her petition, she admitted to the county judge that there never was a marriage between Agnew and herself. Again on the same day she admitted to the guardian ad litem of her children that there never had been any conversation between Agnew and herself to the effect that they were married.

The recital of facts hereinbefore set out are taken from the findings of fact made by the trial judge. On account of petitioner's claim that the written admissions, so damaging to her present contentions, were obtained through misrepresentations, fraud, and coercion on the part of one Mason and the brothers of Agnew—against which contentions the trial court also found—it seems advisable to state the testimony of the county judge as to the circumstances of the signing of the withdrawal.

The persuasiveness of the testimony of the county judge is not diminished by the fact that on the first trial he claimed, and the trial court ruled, that the conversation between petitioner and himself then had was a privileged communication with a public officer. This question was passed upon in deciding the first appeal. On the second trial the county judge testified that before petitioner signed the withdrawal he called her into his private room, where he inquired: "Mrs. Agnew, do you know the purport and legal effect of this instrument you are signing?" She replied: "I do. I am

out of it." After stating to her that, as an adult, she had the right to contract as she pleased in matters affecting merely her own rights, he continued: "But these children have interests separate from you and their interests should be protected regardless of what you might do. Now, Mrs. Agnew, was there ever a legal marriage between Mr. Agnew and you, either ceremonial, common law, or otherwise? If so, you have no right to withdraw your petition and jeopardize the interests of these children." She said: "There was no marriage. I would not admit but what Mr. Agnew was the father of the children, for he was, but there was no marriage." He then inquired: "There never has been?" She said: "No." He then asked: "Would that in substance be your testimony if called as a witness to testify in the case?" She replied: "It would." He then said: "That is all." At the trial he testified: "She went out and she signed the instrument then."

We resume the narrative of facts as found by the trial court. The petitioner accepted the sum of $10,500 and had not offered to return it until, during the second trial, the money so paid, amounting in the aggregate to $11,400, was paid into court to await the final determination of the case. On these findings and others which will be later stated, the trial court concluded that the settlement made between petitioner and Samuel Agnew on behalf of himself and the other heirs of William J. Agnew was valid and binding and therefore petitioner was entitled to have returned to her the moneys so held by the court. The court also concluded that the order of the county court should be affirmed except as so modified and remanded the cause for further proceedings in the county court in accordance with the decision of the circuit court. However, it was not merely on account of what the trial court found to be a settlement made without fraud and with full knowledge of its import that the trial court entered conclusions of law favorable to respondents and entered judgment thereon. It also concluded, on appropriate findings of fact, that petitioner and Agnew never, by any contract or agreement, became or agreed to become husband and wife, and never lived or cohabited together as husband and wife; that the children of petitioner, not having been born in wedlock and the paternity of said children not having been admitted in writing or otherwise by Agnew during his lifetime, were not the heirs at law of William J. Agnew, deceased; and

that he never became estopped to deny that petitioner was his wife nor to deny the paternity of her children.

██ ██    Appellant claims that, however illicit the relations between petitioner and Agnew may have been in their origin, a marked change took place in those relations after her removal from Bancroft. The evidence does show a marked change in the attitude of Agnew toward petitioner's children after her removal from Bancroft, but substantially all of this evidence relates to acts which took place within the year prior to his death, which occurred ten years after her removal from Bancroft. In the light of the testimony which discloses increased affection for petitioner's children, it is regrettable that Agnew neither made testimonial provision for, nor statutory acknowledgment of, those who were probably his children. He did not make the acknowledgment in writing, signed in the presence of a competent witness, required by section 703, R. C. 1919, chapter 184, Laws 1923. Therefore the right of those three children to share in his estate must be based upon proof of a common-law marriage between Agnew and petitioner. For, assuming that on his occasional visits to the Litchfield home he saw the baptismal certificates displayed on the walls and knew that they recited that she was his wife, it is certain that he never furnished petitioner with the marriage certificate which would have been far more effective for the purpose desired than those baptismal certificates of her children.

Appellant contends that her status as the wife of Agnew is to be determined under the laws of Minnesota and particularly section 8562, General Statutes of Minnesota, 1923, which is as follows:

"Marriage, so far as its validity in law is concerned, is a civil contract, to which the consent of the parties capable in law of contracting, is essential."

Respondents contend that appellant's status is to be determined by the laws of South Dakota and particularly by section 102, R. C. 1919, which is as follows:

"Marriage is a personal relation arising out of a civil contract, to which the consent of parties capable of making it is necessary. Consent alone will not constitute marriage; it must be followed by a solemnization, or by a mutual assumption of marital rights, duties, or obligations."

In Svendsen v. Svendsen et al., 37 S. D. 353, 368, 158 N. W. 410, 414, this court said:

"Parties desiring to enter into the marriage relation in this state * * * may * * * enter into a valid marriage by an agreement per verba de praesenti, but only where such agreement is followed by an immediate assumption of such relations as will give rise to an undivided repute that such parties are married."

Turning to the law of Minnesota under which appellant claims, we find that the Supreme Court of that state, in Le Suer v. Le Suer, 122 Minn. 407, 142 N. W. 593, 594, says of common-law marriage:

" 'It is mutual, present consent, lawfully expressed, which makes the marriage.' If they cohabit without such understanding and agreement, they are not husband and wife, however long such relation may continue. Hulett v. Carey, 66 Minn. 327, 69 N. W. 31, 34 L. R. A. 384, 61 Am. St. Rep 419; In re Terry's Estate, 58 Minn. 268, 59 N. W. 1013; Heminway v. Miller, 87 Minn. 123, 91 N. W. 428; State v. Worthingham, 23 Minn. 528."

So that, whether appellant's claim be based on South Dakota law or on the law of Minnesota, there must be, as stated in Bracken v. Bracken, 45 S. D. 430, 188 N. W. 46, "an understanding in the present tense that the parties are husband and wife." Direct evidence of such an agreement is entirely lacking. Agnew's lips are sealed by death; petitioner's, not less affectually, by section 2717, R. C. 1919. There was no written agreement nor witnesses to an oral agreement. If mutual, present consent is to be shown, it must be by circumstances.

■■ In view of the admitted fact that the relations of Agnew and petitioner were illicit in their inception, the following statement from Henry v. Taylor, 16 S. D. 424, 433, 93 N. W. 641, 643, is apropos: "According to the uncontroverted testimony of Sam, his relations with Alice were illicit in their origin, and, until a mutual contract of marriage is shown by competent proof, the presumpton is that such illegal relations continued." The cases cited in support of the foregoing, together with many others, are cited in an extensive note to like effect in 57 L. R. A. (N. S.) at page 77 et seq. Since that time this court has reaffirmed the rule in Re Svendsen's Estate, 37 S. D. 353, 372, 158 N. W. 410, 411,

415, and in Bracken v. Bracken, 45 S. D. 430, 435, 188 N. W. 46, 47, said: "Cohabitation that is illicit in the beginning is presumed to be illicit to the end." It seems to be the general rule that the change from illicit to matrimonial relationship may be shown by circumstantial evidence. 57 L. R. A. (N. S.) 77; 18 R. C. L. 420. But the circumstances must be such as to exclude the presumption that the original relation continued, and to prove satisfactorily that it was changed to matrimonial union by mutual consent. Jones Blue Book of Evidence, § 89, 18 R. C. L. 421; note 57 L. R. A. (N. S.) 77; Hall v. Industrial Comm., 165 Wis. 364, 162 N. W. 312, L. R. A. 1917D, 829; In re McDevitt's Estate, 280 Pa. 50, 124 A. 294. But in the case at bar the trial court found against appellant's contentions that the relations of the parties changed from illicit to matrimonial at the time of her removal from Litchfield. The court found that: "Said illicit and meretricious relationship continued and existed between said parties * * * during her residence in the city of Litchfield, Minnesota, up to and until the time of the death of the said William J. Agnew; * * * nor did they ever contract or agree to take each other as husband and wife * * * and the said parties in fact never at any time assumed toward each other marital relations or obligations; * * * that on removing to the city of Litchfield, Minnesota, the petitioner established a home for herself and her said children, and for the convenience and social standing of herself and children in the community, assumed the name of Agnew, and for the purpose of establishing and maintaining the appearance of morality and avoiding ill repute and scandal, claimed to be a married woman * * * and the said William J. Agnew and petitioner never at any time cohabited together as husband and wife."

There was evidence tending to support appellant's claim of a common-law marriage, but for every item of evidence so tending there was at least an equal amount of evidence in disproof thereof. The trial court heard this evidence and decided against appellant's claim. The findings of the trial court not being against the clear preponderance of the evidence and the credibility of witnesses having entered into the findings, this court should not disturb those findings. Churchill & Alden Co. v. Ramsey, 50 S. D. 73, 208 N. W. 406; Meloy v. Kell, 53 S. D. 388, 220 N. W. 863. See also Ahneman v. Noser, 180 Minn. 463, 231 N. W. 199.

It is true that there are cases which justify the statement found in the note heretofore cited in 57 L. R. A. (N. S.) 77, that "the law labors to declare the legitimacy of a child wherever possible." See Coad v. Coad, 87 Neb. 290, 127 N. W. 455, 456, and note thereon in L. R. A. 1915E, page 72, subnote 52. There was, however, a child in the Svendsen Case of which this court said: "The child was conceived while respondent lived with deceased, and he was undoubtedly its father." But in that case this court also said: "Yet it is not for this or any other court to disregard the laws of our state, even though such court might feel that justice would be promoted thereby. By so doing we would take property, which by the laws of this state—be they just or unjust—belongs to certain persons, and give the same to those having no legal claim thereto." In re Svendsen's Estate, 37 S. D. 353, 372, 158 N. W. 410, 416.

However strong the natural appeal of childhood for consideration and protection, this does not alter the necessity of proving the change from an illicit to a matrimonial relation. Nor is it fair to the learned trial judge to assume that he is not equally sensible to those appeals to sympathy, because he found the facts fairly from the evidence and ruled thereon according to law. However strong the emotional appeal of the evidence disclosing the attitude of that man of 64 years toward these children during the year 1924, it was in January, 1915, or December, 1914, that this mutual consent per verba de praesenti is claimed to have been given. This was 14 months at the most after he had paid petitioner $6,000 in a settlement wherein it was agreed that he did not admit that he had ever promised to marry her nor did he acknowledge the paternity of the first two children. After she and her children had removed from Bancroft, which was unquestionably his home, he paid court to another woman until her death almost four years later. Whatever the agreement between Agnew and petitioner in December, 1914, or January, 1915, whether it involved a money consideration greater or less than the $6,000 paid in settlement in November, 1913, his subsequent dealings with and acts toward petitioner are no less readily explainable on the theory that after January 16, 1915, their relations, if any, were to continue illicit, as they are explainable on the theory that they then agreed per verba de praesenti to be husband and wife. Appellant has failed

to support the burden of proof imposed upon her. The findings of the trial court are amply supported by the evidence. There is no clear preponderance against them. Therefore the judgment and order of the circuit court must be, and they are, affirmed.

POLLEY, P. J., and CAMPBELL, BURCH, ROBERTS, and WARREN, JJ., concur.