## RITTGERS v. UNITED STATES.
### No. 13141.

Circuit Court of Appeals, Eighth Circuit.
April 8, 1946.

Samuel P. Halpern, of Minneapolis, Minn. (Max Shapiro, of Minneapolis, Minn., on the brief), for appellant.

Fendall Marbury, Atty., Department of Justice, of Washington, D.C. (Victor E. Anderson, U. S. Atty., and Linus J. Hammond, Asst. U. S. Atty., both of St. Paul, Minn., William M. Lytle, Atty., Department of Justice, of Chicago, Ill., John F. Sonnett, Asst. Atty. Gen., Searcy L. Johnson, Sp. Asst. to Atty. Gen., and D. Vance Swann, Atty., Department of Justice, of Washington, D. C., on the brief), for appellee.

Before GARDNER, JOHNSEN, and RIDDICK, Circuit Judges.

GARDNER, Circuit Judge.

This was an action brought by appellant as the widow of a deceased soldier to re-

cover benefits under Section 602(d) (2) of the National Service Life Insurance Act of 1940, and Acts amendatory thereto, 38 U.S.C.A. § 802(d) (2), which in effect provide that any person in the active service of the armed forces of the United States on or after October 8, 1940, who dies in line of duty before the expiration of 120 days after December 20, 1941, without having in force at the time of his death at least $5,000 of insurance with the Government for which he had applied and paid premiums, shall be deemed to have applied for and to have been granted life insurance in the amount of $5,000, payable in monthly installments to the widow or widower of the insured, if living and while unremarried.

In her complaint, appellant alleged that she was the unremarried widow of Claude A. Rittgers, a soldier who was inducted February 10, 1941, and who died in line of duty September 23, 1941, without having insurance in force with the Government at the time of his death. The Government, in its answer, denied appellant's allegation that she was unremarried, and as an affirmative defense alleged "that the plaintiff, Mrs. Genevieve Rittgers, lived with, held herself out as, represented herself to be and conducted herself as the wife of Gerald Stump while residing, among other places, at Apartment 4, 2521 Portland Avenue, Minneapolis, Minnesota. Having thus maintained the relationship which usually exists between husband and wife with said Gerald Stump, and having claimed and received from the community in which she resides, and from her friends and acquaintances the recognition afforded a married woman, presumably married in accordance with statutory requirements of the jurisdiction in which she lived, the plaintiff, by law, is estopped to deny that she has remarried since the insured's death for the purpose of asserting any right, title or interest as his unremarried widow, to any benefits of National Service Life Insurance which may be payable on account of his death." This portion of the answer was stricken on the ground that the facts alleged did not constitute a marriage under the laws of Minnesota.

The case was tried to a jury on the sole issue of whether plaintiff had remained the unremarried widow of Claude A. Rittgers. There was submitted to the jury a special interrogatory as follows: "Did the plaintiff and Gerald Stump enter into a valid common law marriage in the State of Iowa on or before May 15, 1942?" At the close of all the testimony plaintiff moved for a directed verdict, which motion was denied, and the case was submitted to the jury on instructions to which neither party saved any exceptions. The jury having by its verdict found that plaintiff and Gerald Stump entered into a common law marriage in the State of Iowa on or before May 15, 1942, plaintiff moved for judgment notwithstanding the verdict or for a new trial, which motion was denied, and the court thereupon entered judgment dismissing plaintiff's action on its merits, from which judgment she prosecutes this appeal.

Plaintiff seeks reversal on substantially the following grounds: (1) The special verdict of the jury and the judgment of the court based thereon, finding that plaintiff entered into a valid common law marriage in Iowa on or before May 15, 1942, with Gerald Stump, were not justified by the evidence and are contrary to law; (2) the court erred in denying plaintiff's motion for a directed verdict in her favor and in denying her motion for judgment notwithstanding the verdict on the ground that the evidence was insufficient to establish a common law marriage in Iowa and that the Government failed to sustain the burden of establishing a common law marriage in Iowa; (3) the court erred in admitting testimony of the conduct of appellant in the State of Minnesota as evidence of a contract of marriage in Iowa; (4) the court erred in submitting to the jury the special interrogatory as to whether or not plaintiff and Gerald Stump were legally married in Iowa on or before May 15, 1942, because the evidence was insufficient to sustain an affirmative answer to such interrogatory.

Plaintiff and Claude A. Rittgers were married on May 3, 1941, in Louisiana while Rittgers was in the military service of the United States. She was a resident of Iowa and had known Rittgers for two years prior to their marriage. Prior to her marriage she had lived with Rittgers in an apartment in Waterloo, Iowa, for about six months, and after he was inducted into the military service she followed him to Louisiana where they were married. Following her marriage she lived with her husband for two months in Louisiana and then returned to Waterloo, Iowa, where she renewed her acquaintance with Gerald Stump. On September 23, 1941, her husband was killed while in line of duty in the military service.

After her marriage and before the death of her husband, she and Stump were together almost daily and often in her apartment. He stayed with her at her apartment overnight on many occasions during that period and was asleep on a bed with her at two o'clock in the morning when word came of her husband's death, and he spent the rest of the morning with her. Plaintiff was thirty-five years old and Stump was twenty-five years old. She thereafter kept company with Stump continuously and he frequently stayed overnight with her. She was not supported by Stump who during this time was receiving unemployment compensation and occasionally worked for the Holland Furnace Company. In April, 1942, she moved to the Fullerton Apartments in Waterloo, Iowa, where she had previously roomed with Rittgers. In renting the apartment she represented herself as Mrs. Rittgers. Stump moved in with her without any arrangement between them, and they both occupied the one room apartment until May 15, 1942. Subsequent to her marriage she always used the name Rittgers and never used the name Stump until she came to Minneapolis. On May 15, 1942, she decided, apparently on the impulse of the moment, to leave Iowa for her mother's home in South Dakota. Stump told her he thought he would go to Minneapolis and she expressed a desire to go with him, and Stump arranged for a ride in a friend's car. They all drove to Minneapolis, arriving there in the early morning of May 16, 1942, having driven all night.

During the time plaintiff lived in Iowa she never used the name Stump, was never introduced as Mrs. Stump, never corresponded under that name, never discussed marriage with Stump, never had any understanding that they would be married or that their relationship was or would be that of husband and wife. She cohabited with Stump while in Iowa and also kept company with other men during that period. While in Waterloo her ration books were issued to her in the name of Mrs. Genevieve Rittgers. She was known in the community only as Mrs. Rittgers. Both plaintiff and Stump testified that they did not enter into a contract of marriage while they were living in Iowa and that they did not intend to do so but that they cohabited together. They were not known to anyone in the community where they were living in Iowa as being married to each other, and they did not hold themselves out as man and wife to anyone; neither of them introduced the other as a spouse. The trial court in instructing the jury said:

"There is no evidence that in the State of Iowa plaintiff and Gerald Stump were known in the community as husband and wife, or that they held themselves out as husband and wife in the State of Iowa, except that there is testimony that Mrs. Robbins, the owner of the Fullerton Apartments, assumed that they were husband and wife when they moved into apartment 4 in her apartment house."

After arriving in Minneapolis plaintiff and Stump rented an apartment and lived there for a year and a half and until February 9, 1944. While in Minneapolis they held themselves out and were recognized as husband and wife, and plaintiff was known as Mrs. Stump.

In its original answer the Government pleaded as an affirmative defense that the plaintiff lived with and held herself out to be the wife of Gerald Stump while residing in Minneapolis, Minnesota. There was no affirmative plea that she had contracted a marriage with Stump in the State of Iowa. That defense apparently was relied upon as the court held that a common law marriage could not be contracted in the State of Minnesota. In its instructions to the jury the court, among other things, said:

"If these parties had lived only in Minnesota during the period in question, it is clear that there would be no valid lawful marriage between them, regardless as to the extent that they had represented themselves to be husband and wife."

The court further said in its instructions:

"Thus, you will understand that unless the Government has established that this plaintiff entered into a marriage contract in the state of Iowa with Gerald Stump, she is an unremarried woman, regardless of what may have taken place in the State of Minnesota. In order to have a common law marriage, the parties must enter into an agreement that they then be husband and wife. If the evidence in this case fails to sustain such a present agreement of marriage, followed by cohabitation as husband and wife, there is no common law marriage in the eyes of the law."

Again the court said:

"A man and woman may live together as husband and wife, and yet not be husband and wife. But if the parties, to others, acknowledge their relationship to be that of husband and wife, if they were re-

garded thus by friends and neighbors and in the community, and if they cohabit as husband and wife, such circumstances may constitute evidence from which it may be adduced that a marriage contract has been entered into between the parties. The question is not whether or not these parties agreed to live together as husband and wife. That is, a couple may agree to live together as husband and wife and yet there be no contract of marriage."

The court further instructed:

"There is no evidence that in the State of Iowa plaintiff and Gerald Stump were known in the community as husband and wife, or that they held themselves out as husband and wife in the State of Iowa, except there is testimony that Mrs. Robbins, the owner of the Fullerton Apartments, *assumed* that they were husband and wife when they moved into Apartment 4 in her apartment house. * * * If the evidence is not sufficient to establish a present intention and understanding on the part of these parties to become husband and wife and *followed by cohabitation in the State of Iowa prior to May 15, 1942,* then there is no valid common law marriage and this plaintiff is still the unremarried widow of Claude Rittgers."

Referring to the relationship between plaintiff and Stump after her marriage and prior to the death of her husband, the court instructed the jury as follows:

"The law is that where cohabitation in its beginning is illicit, there must be affirmative proof of subsequent intention to change that relationship into a legitimate relationship of husband and wife. So, in this case, ladies and gentlemen, you should ask yourselves, in light of the evidence, was the cohabitation between plaintiff and Gerald Stump in Iowa merely a continuation of that illicit relationship which began prior to Claude Rittgers' death? If it was, there is no common law marriage in this case. Moreover, you should ask yourselves whether in light of all the evidence it affirmatively appears that the parties intended to and did abandon that illicit relationship before they left the State of Iowa and changed it by mutual agreement into a legal and respectable relationship of husband and wife. If not, there is an utter absence of any evidence of a valid common law marriage."

The court also instructed the jury as follows:

"The burden of proof in this case rests upon the Government to establish plaintiff's remarriage. In other words, the Government contends that plaintiff is not entitled to the insurance because of her remarriage to Gerald Stump, and in order to sustain this defense, the Government must establish this fact by a fair preponderance of the evidence."

█ As the instructions were not excepted to we think we may accept them as stating the applicable law, and the question presented is whether or not under the law as so stated there was sufficient evidence to sustain the finding of a common law marriage in the State of Iowa. The court's instructions as to the character of proof necessary to establish a common law marriage under the law of Iowa were justified by the decisions of that state. In re Boyington's Estate, 157 Iowa 467, 137 N.W. 949; State v. Grimes, 215 Iowa 1287, 247 N.W. 664; Pegg v. Pegg, 138 Iowa 572, 115 N.W. 1027.

█ The relation between the plaintiff and Stump was in its inception illicit and meretricious and it was known to be such by both the parties. At that time plaintiff's husband was still living. In such circumstances the presumption is that such relation continued throughout the period of cohabitation to be meretricious even though it continued after removal of an impediment to marriage—in this case the death of Rittgers. It was therefore not sufficient that the Government prove cohabitation between plaintiff and Stump after the death of plaintiff's husband, but it was necessary to produce proof overcoming the presumption that the relation continued to be illicit and meretricious. There was, as pointed out by the trial court, no representation by plaintiff and Stump while they were living together in Iowa that they were husband and wife. Not only this, but plaintiff and Stump both testified that there was no agreement to become husband and wife and no intention to assume that relation while they were living in Iowa. As the relation of the parties here in its inception was illicit, it was necessary to prove a new contract of marriage, and there being no direct evidence of such a contract, circumstances relied upon must be such as to exclude the inference or presumption that the former relation continued, and they must satisfactorily prove that it had been changed into that of actual matrimony by mutual consent. In re Boyington's Estate,

supra; In re Medford's Estate, 197 Iowa 76, 196 N.W. 728; Bracken v. Bracken, 45 S.D. 430, 188 N.W. 46; Henry v. Taylor, 16 S.D. 424, 93 N.W. 641; Agnew v. Agnew, 58 S.D. 164, 235 N.W. 644.

The issue in the final analysis is a very narrow one. In its brief the Government claims that plaintiff and Stump on May 15, 1942, before leaving Waterloo, determined to change the character of their relation. The same contention was urged on oral argument. This argument concedes that prior to May 15, 1942, the relation of the parties was illicit. But the court instructed that if the evidence were insufficient to establish "a present intention and understanding on the part of these parties to become husband and wife and followed by cohabitation in the State of Iowa prior to May 15, 1942, then there is no valid common law marriage and this plaintiff is still the unremarried widow of Claude Rittgers." What happened on May 15, 1942, can therefore have no bearing on the relation assumed by the parties in Iowa. The facts and circumstances that might be considered must have occurred "prior to May 15, 1942." But a consideration of what occurred in Iowa on May 15, 1942, could not, we think, strengthen the Government's contention as there is no evidence that plaintiff and Stump cohabited in Iowa. There is no evidence of any agreement between the parties, entered into on May 15, 1942, in Iowa, to become husband and wife, nor to change their relation. As has been observed, both parties deny any such agreement or intention.

■ It is argued by the Government that cohabitation following a marriage contract is not essential to constitute a common law marriage. There would seem at least to be two conclusive answers to this contention. First, it is in the teeth of the explicit instructions of the court heretofore quoted. These instructions were not excepted to by either of the parties and therefore constitute the law of the case. United States v. Nickle, 8 Cir., 70 F.2d 873; United States v. Hossmann, 8 Cir., 84 F.2d 808; Hard & Rand v. Biston Coffee Co., 8 Cir., 41 F.2d 625. Second, we think these instructions correctly state the rule of law as it exists in Iowa. Pegg v. Pegg, supra; State v. Grimes, supra.

In addition to the facts and circumstances before related the record warrants the conclusion that these parties were of normal intelligence. They were not illiterate nor ignorant; they knew that the character of their cohabitation could be changed from an illicit to a marital one by a ceremonial marriage. In fact, plaintiff had by a ceremonial marriage changed the character of her cohabitation with Rittgers from a meretricious to a marital relationship, thereby clearly indicating her intention to change the relation that had theretofore existed between her and Rittgers.

■ We are of the view that it affirmatively appears from the evidence and the circumstances that there was no agreement entered into by the parties prior to May 15, 1942, whereby they then agreed to become husband and wife followed by cohabitation as such in the State of Iowa.

Notwithstanding the fact that the court struck from defendant's answer the affirmative defense that the plaintiff had lived with and held herself out to be the wife of Gerald Stump in the State of Minnesota, evidence of the conduct of the parties in Minnesota was over the objection of plaintiff received in evidence. It is argued that the court erred in receiving such evidence. The court in its instructions told the jury in effect that the conduct of the parties in Minnesota could not be considered in determining whether or not a common law marriage had been consummated between the parties. A great deal of testimony, however, was admitted showing that from the time the parties took up their residence in Minneapolis they held themselves out to be husband and wife and were reputed as such in the community where they were living. From such facts no presumption was warranted as to the relation of the parties in the State of Iowa, but whether or not the admission of the testimony was prejudicial error we find it unnecessary to decide.

■ Plaintiff's right to recover is dependent upon her legal status, not upon her morals, her worthiness, nor her social standing. The Act of Congress under which the action is maintained contains no limitations of this character.

We conclude that the court should have directed a verdict in favor of the plaintiff, and failing so to do should have entered judgment for plaintiff notwithstanding the verdict. The judgment appealed from is therefore reversed and the cause remanded with directions to enter judgment in favor of plaintiff.