**BURKE v. UNITED STATES et al.**

Civ. A. No. 7728.

United States District Court
E. D. Pennsylvania.

Dec. 16, 1948.

Wm. Vincent Mullin, Philadelphia, Pa., for plaintiff.

Drew J. T. O'Keefe, Asst. U. S. Atty., Gerald A. Gleeson, U. S. Atty., Philadelphia, Pa., for defendant.

Irvin Stander, Phildelphia, Pa., for additional defendant.

HENDERSON, District Judge.

Joseph M. Burke, the deceased Soldier in this case entered active service in the United States Army on November 27th, 1942, at the age of twenty-two years. Effective July 1st, 1943 he was granted National Service Life Insurance in the amount of $10,000.00 for which he designated as principal beneficiary, Mary Burke, described as "Mother", and designated as contingent beneficiary, Roy Burke, described as "Brother". Joseph M. Burke was killed in the service on January 10th, 1945, while the insurance was in full force and effect.

It was established that the natural Mother of the Soldier is Helen Burke, Plaintiff herein, and that she became mentally ill and was hospitalized from 1924 until 1941. The natural Father, Michael Burke, died in December, 1942.

Claims for the insurance proceeds were presented by Helen Burke, natural Mother, and by Mary Burke, the designated beneficiary, who claimed as a person standing in loco parentis to the deceased soldier, for a period of at least one year prior to his entry into active service. The Veterans' Administration found in favor of Mary Burke, the designated beneficiary, and upon Plaintiff's appeal to the Board of Veterans' Appeals, the designated beneficiary was again found to have acted in the capacity of loco parentis to the soldier for the period of at least one year during his minority and prior to his enlistment.

From this determination by the Board of Veterans' Appeals the Plaintiff brought the present action against the Government pursuant to the provisions of the National Service Life Insurance Act of October 8th, 1940, 54 Stat. 1008 et seq; 38 U.S.C.A. § 801 et seq. The Government filed an Answer and requested the Court to join Mary Burke, the principal beneficiary, and Roy Burke, contingent beneficiary, as parties Defendant under the provisions of the Act. The Court entered an appropriate Order and Mary Burke and Roy Burke were duly served with the pleadings and summons. Appearances and Answers were filed on their behalf, and it appearing that Roy Burke was a minor, the Court appointed

Julius J. Levis, Esquire, as Guardian Ad Litem.

The evidence submitted on behalf of Mary Burke, designated beneficiary, establishes that she met Michael Burke, the soldier's Father, in 1929, her name then being Mary Oslager. In 1930 they went to live together in a common household, of which the soldier, then ten years of age, was a member, and Mary Oslager assumed the name of Mary Burke. This common family household was maintained from 1930 on, and continued even after the death of Michael Burke in December, 1942, for the soldier returned there during his furloughs in 1943 and 1944. In June, 1933 Mary Burke bore a child, Roy Burke, whose Father was Michael Burke, and the evidence shows that Michael Burke acknowledged this boy as his son, and had him baptized and registered as his son. The deceased soldier and Roy Burke grew up in the same household as though they were Brothers.

Despite her designation as beneficiary, the right of Mary Burke to recover is dependent on her ability to establish that she is within the permitted class of beneficiaries provided in the National Service Life Insurance Act. Amended Section 602(g) of this Act appearing in 38 U.S.C.A. § 802(g), 1948 Pocket Part, provides that "insurance shall be payable only to a widow, widower, child * * * parent, brother or sister of the insured.

Amended Section 601(f) of the Act appearing in 38 U.S.C.A. § 801(f), 1948 Pocket Part, defines the terms "Parent", "Father" and "Mother" to include persons who have stood in loco parentis to a member of the military or naval forces at any time prior to entry into active service for a period of not less than one year * * *."

The testimony of the designated beneficiary, Mary Burke, and her witnesses, on the question of her status as a person in loco parentis to the soldier, establishes that from 1930 until 1942, Mary Burke gave the deceased soldier every measure of maternal care. She sent him to school and Church, washed and mended his clothes, prepared his meals, heard his lessons, celebrated his birthdays with parties and gifts, entertained his friends, and exercised maternal supervision and discipline over him. In addition, the testimony is uncontradicted that from 1930 to 1933 the designated beneficiary continued to work in a laundry in order to supplement the meager income to Michael Burke, the soldier's father, and that her earnings were used to help in the support, maintenance and education of the deceased soldier.

The testimony presented on behalf of Helen Burke, the natural Mother, did not contradict the designated beneficiaries' testimony in any material respect. In fact, it served to strengthen it. Several of the witnesses for Helen Burke admitted that on various occasions when they saw the deceased soldier he stated to them that he was "happy" in the household where he was being brought up. While there were some inferences suggested that the designated beneficiary tried to keep the soldier away from his natural Mother and her family, these inferences were dissipated on cross examination when the witnesses admitted that there were no statements made by the soldier or the designated beneficiary to support such a conclusion, and that they were merely assuming this to be the fact. Furthermore, it was brought out that the soldier would not have been permitted to visit his Mother in the institution because of the rules against visiting by children. It must be remembered that all of these witnesses were members of Helen Burke's family, and that they were, therefore, interested witnesses. Yet, their testimony failed to contradict, in any material particular, the facts presented by Mary Burke and her disinterested witnesses in support of her status as a person in loco parentis to the soldier.

Mary Burke did not deny that her relationship with the soldier's father was meretricious because his wife was in a mental institution and no divorce was ever granted. However, Mary Burke's right to recover is dependent on her legal status, and not upon her morals, her worthiness, nor her social standing. The Act of Congress under which her claim is maintained

contains no limitations of this character. Rittgers v. U. S., 8 Cir., 1946, 154 F.2d 768.

It has been urged, that since the soldier's Father was a member of the same household it is therefore impossible for any other person to stand in loco parentis to the soldier. There is nothing in the Act of Congress, or in any of the cases decided thereunder, which requires a person in loco parentis to stand in the place of *both* Father and Mother. Our social order recognizes that Father and Mother perform many separate functions in the care of a child, and, therefore, a person who assumes the duties and obligations of either a Father or Mother to the soldier may qualify as a person in loco parentis. In the case of Leyerly v. U. S., 10 Cir., 1947, 162 F.2d 79, the natural Mother was mentally ill as in the present case, and the deceased soldier lived with his uncle and aunt from the age of five and one-half months until he entered the service. His natural Father also lived in the same household for some time, but the Court held that this fact did not affect the loco parentis status assumed by the uncle and aunt. Great weight should be given to the deceased soldier's designation of Mary Burke as "Mother" in his policy application. He was twenty-two years of age at the time, and made this application while in service in a Texas Camp, far away from the influence of the common household. While his action does not conclusively establish her status as a person standing in loco parentis for all purposes, it is, nevertheless, conclusive evidence that the soldier considered her as a person in loco parentis to himself. Horsman v. U. S., D.C. Mo.1946, 68 F.Supp. 522. This conclusion is bolstered by the original telegram, admitted in evidence, sent by the soldier, while in service, to Mary Burke, addressed to her as "Mother", and notifying of an allotment in her favor of $25.00 a month. Also important in this connection is a letter, admitted in evidence, from the soldier to Mary Burke dated March 15th, 1944, in which he addresses her as "Dear Mother", relates some of his experiences in the service and asks her to send him some money.

The Courts have adopted, since World War I, the principle that the Act of Congress authorizing National Service Life Insurance should be liberally construed in favor of the insured soldier, and to carry out his intention. See McClure v. U. S., 9 Cir., 95 F.2d 744 and Meisner v. U. S., D.C., 295 F. 866. In the recent cases decided on the question of construing the term "loco parentis" the same liberal attitude is manifest. In Zazove v. U. S., 7 Cir., 156 F.2d 24, the soldier did not enter the household of the person claiming in loco parentis until after he had reached twenty-one years of age. The Circuit Court, nevertheless, found claimant to be in loco parentis, saying 156 F.2d at page 26: "Did Congress use the words in loco parentis as descriptive words, or did it use the words with the common-law limitation upon them, namely, that the relationship could not exist unless the insured were a minor? We find no limitation in the words of Congress. We think they were used as descriptive words and were not to be restricted to the 'stick in the bark' legal connotations usually attached at common law."

In the case of Jadin v. U. S., D.C., E.D. Wis.1947, 74 F.Supp. 589, 591, the soldier, when ten years old, went to live at the home of the designee in the policy under a paid boarding contract. Even after the business relationship was terminated, he was treated as a member of the family, and the Court held that the beneficiary was a person in loco parentis, despite the fact that the natural Mother was still alive and was a claimant. The Court said in its Opinion: "The statute itself does not define the term, 'in loco parentis,' but it seems to me Congress intended to give the serviceman a broad discretion in naming as his beneficiary a person in whose home he had lived for at least one year as a member of the family. I believe that the family relationship rather than the assumption of legal responsibility for support is the important factor to be considered." To the same effect, see Carpenter v. U. S., Cir.1948, 168 F.2d 369, where the Court allowed an adoptive sister of the deceased soldier to collect the insurance proceeds, even though the permitted class of beneficiaries under

the Act did not include Brothers and Sisters by adoption.

Congress itself has displayed the same liberal attitude towards the naming of beneficiaries in war risk policies for by amendment in 1946 it removed all restrictions in naming beneficiaries, and the soldier, since August 1st, 1946, can name anyone he chooses as his beneficiary. Of course, the present case is much stronger in point of fact than either the Zazove or Jadin cases cited above. In the present case the soldier lived in the same household with the named beneficiary from the age of ten years until he entered the service, and the uncontradicted evidence shows that for a period of three years the named beneficiary contributed towards the financial support of the soldier by working in a laundry. Thus, the named beneficiary qualifies as a person standing in loco parentis even under the strictest common law interpretation of the term, because the status was assumed during minority, and support was furnished during a considerable period by the named beneficiary.

The Court does not attach any significance to the fact that the soldier was away from the household of the named beneficiary for two years from 1937 to 1939, while he was in the C.C.C. Camp, or to the fact that the soldier became self-supporting when he was nineteen years of age. As to the first item, his absence at the C.C.C. Camp was with the express permission and approval of the named beneficiary, and the soldier returned to her household upon his discharge in 1939. In addition, the testimony establishes that the named beneficiary wrote to him frequently while at Camp, and sent him packages of food and clothing at regular intervals. The soldier on his part made an allotment of $22.00 per month in her favor while at the C.C.C. Camp, thus showing his continued affection and regard for the named beneficiary. The same circumstance was present in the Leyerly case, cited above, and the Circuit Court held that this did not terminate the relationship of loco perentis because this relationship, once it is established and continued for at least one year at any time prior to entry into service,

qualifies the named beneficiary as a person standing in loco parentis.

As to the soldier becoming self-supporting after he was nineteen years of age, it must be remembered that the Act of Congress sets up only two conditions on the relationship of loco parentis, first that it has to exist for a period of at least one year, and secondly that this minimum period of one year can be *at any time* prior to the soldier's entry into active service. Thus, it is manifest that once the relationship of loco parentis exists for a period of one year, it could be followed by any other relationship without affecting the right of the person standing in loco parentis, for that year, to qualify as a named beneficiary.

Helen Burke, as the natural Mother, of the soldier, has no vested right in the soldier's insurance because the Act of Congress relating to National Service Life Insurance defines the term "Parent", "Father and "Mother" to include "persons who have stood in loco parentis to a member of the military or naval forces at any time prior to entry into active service for a period of not less than one year." A person who stood in the relationship of loco parentis to the soldier for one year prior to entering service would take precedence over a natural parent who is not a named beneficiary. It is thus clear, that Congress contemplated a relationship or status based on facts, and not on circumstances of birth. See Leyerly v. U. S. cited above. As Plaintiff in this case, Helen Burke had the double burden of proving first, that Mary Burke was not a person in loco parentis to the soldier, and secondly, that Roy Burke, the contingent beneficiary, was not the Brother of the soldier. The evidence presented proves conclusively that Roy Burke and the soldier were both of the same Father. The regulations of the Veterans' Administration, issued under the authority of the Act of Congress, provided that the named beneficiaries may be "Brother or Sister (including those of the half-blood)". See Sec. 10.3446 of Regulations, issued October 16th, 1942, appearing in 7 F.R. 8363. However, it is not necessary for the Court to make a determination of the rights of Roy Burke as the half-brother of the soldier, because

the Court has found that Mary Burke, the principal beneficiary, is a person standing in loco parentis to the soldier. It must be pointed out that the Plaintiff has not met the burden upon 'her of proving that neither Mary Burke, principal beneficiary, nor Roy Burke, contingent beneficiary, are within the permitted class of beneficiaries under the Act of Congress.

█ Trial was had before the Court sitting without a jury, despite the Plaintiff's insistence on a jury trial. The Court was impelled to hear this case without a jury because this action is against the Government and Amendment 7 of the Constitution, guaranteeing trial by jury, has no application in its own force in actions against the Government on War Risk Policies. Jury trials are not a matter of right for persons asserting claims against the sovereign. Galloway v. U. S., 1943, 319 U.S. 372, 63 S.Ct. 1077, 87 L.Ed. 1458, Rehearing denied 320 U.S. 214, 63 S.Ct. 1443, 87 L.Ed. 1851. Furthermore, the procedure in actions of this kind are governed generally by the Tucker Act, Title 28, U.S.C.A., § 41, Subdivision 20 [now § 2402], which provides inter alia: "All suits brought and tried under the provisions of this paragraph shall be tried * * * without a jury." At the close of the testimony the additional Defendants presented a Motion to Dismiss the Plaintiff's Case, and to enter a Directed Verdict for Mary Burke, Additional Defendant. In the light of Plaintiff's failure to meet her burden of proof as set out above, this Court would have been compelled to enter a directed verdict for the additional Defendant, Mary Burke, even though the case had been tried before a jury, so that the question of the Plaintiff's right to a jury in this case becomes, in a large measure, only academic.

█ Counsel for the additional Defendant, Mary Burke, have presented a request for the allowance of counsel fees in the amount of $1,000.00 being 10% of the face amount of the policy in suit. The Court finds that the counsel fee requested is reasonable for the services rendered, and since it is no more than 10% of the amount in suit, that it does not violate the provi-

sions of the Act of June 7th, 1924, 43 Stat. 628, as amended, 38 U.S.C.A. § 551.

The Court therefore finds that the named beneficiary, Mary Burke, is a person standing in loco parentis to the soldier in accordance with the National Service Life Insurance Act, and, accordingly, enters its judgment in favor of Mary Burke, additional Defendant in the above case. Counsel for the additional Defendant are directed to prepare an appropriate decree for the Court in connection with this finding and the award of counsel fee.