In the Matter of the ESTATE of Melvin KRANIG, Deceased.

No. 12686.

Supreme Court of South Dakota.

Argued Feb. 25, 1980.

Decided April 30, 1980.

John L. Morgan of Morgan, Fuller, Theeler & Cogley, Mitchell, for appellant Harriet Abdalla.

Richard D. Hagerty, Yankton, for appellee Estate.

MILLER, Circuit Judge.

Appellant appeals from a judgment of the trial court holding that she was not the surviving spouse of Melvin Kranig, deceased, and which denied her application for homestead and family allowance. We affirm.

## FACTS

Harriet Abdalla (appellant) first met decedent, Melvin Kranig, in 1941. About one year later they began "going around together." On or about December 12, 1942, Melvin asked appellant to commence living with him, which she did. Appellant's uncorroborated testimony was that Melvin "asked me to come and live with him as his wife." It is undisputed that they never entered into any formal wedding ceremony.

Appellant lived in Melvin's home continuously for a period of thirty-five years, until his death in July 1977, except for a short period of time in 1945 during which she resided and was employed in Chicago. During these many years of cohabiting, the appearance of a normal marriage relationship was present. Appellant kept house, did the laundry and cooking and generally conducted herself as a farm wife.

Early in their relationship things were particularly difficult for them. Originally they lived in a rented house which had no improvements or running water. She hauled water some distance, up a hill, and it was necessary for her to haul firewood for fuel. In 1948 they moved to their present farm which had a somewhat better home. However, this house also lacked the conveniences of running water and indoor plumbing and appellant therefore continued to carry water for the home until 1967. In 1975 Melvin built a new modern home where they lived until his death in 1977.

Throughout their relationship no property was acquired in which appellant had any title. Nearly all of Melvin's property was held in partnership with his brothers. They had no joint bank account.

It seems clear that Melvin's immediate family treated appellant in a manner as is typical of a relationship between in-laws.

Appellant comforted Melvin in his last illness and was the first one notified of his death. She selected a casket and the burial clothes. Cemetery lots were selected so that they could be interred side by side. A headstone has been selected bearing the name "Kranig" and showing both of their given names. Subsequent to Melvin's death many expressions of sympathy were given to appellant in the same manner and form as would be given any widow.

Unfortunately, Melvin died intestate. One of his brothers petitioned for letters of administration. The petition did not name appellant as an heir. Due and proper notice of the petition was made by mail and publication. Pursuant to a hearing on October 17, 1977, an order was entered by a circuit judge (not the trial judge here) granting the petition. The order recited that the allegations of the petition had been proven and established as true and further stated that no objections had been made to the same.

Several months later, on July 7, 1978, appellant, under her maiden name of Harriet Abdalla, petitioned the court to set aside the homestead and to provide for a family allowance. After an evidentiary hearing, the trial court entered its memorandum decision and subsequently signed findings of fact, conclusions of law and a judgment, which are here on appeal.

## ISSUE

The sole issue is whether the trial court erred in holding that appellant is not the

surviving spouse of Melvin Kranig, deceased. We find that the trial court did not so err.

## SCOPE OF REVIEW

In our review here the issue is not whether we agree with the decision of the trial court nor whether we would reach the same or a different decision were we to collectively review the record. We may not set aside findings of fact unless they are "clearly erroneous" and must give due regard to the opportunity of the trial court to judge the credibility of the witnesses. SDCL 15–6–52(a); *In re Estate of Hobelsberger*, 85 S.D. 282, 181 N.W.2d 455 (1970).

## DECISION

As stated earlier herein, it is undisputed that the parties never entered into a formal marriage ceremony. At the time the parties commenced their cohabitation, our statutes provided for "common law" or "informal" marriages. The salient statutes are as follows:

SDC 14.0101 Marriage defined: consent necessary; solemnization or assumption of marital status required. Marriage is a personal relation arising out of a civil contract to which the consent of parties capable of making it is necessary. Consent alone will not constitute marriage; it must be followed by a solemnization or by a mutual assumption of marital rights, duties or obligations.*

SDC 14.0104 [SDCL 25–1–2] Present consent necessary. The consent to a marriage must be to one commencing instantly, and not to an agreement to marry afterwards.

SDC 14.0105 [SDCL 25–1–5] Proof of marriage. Consent to and subsequent consummation of marriage may be manifested in any form and may be proved under the same general rules of evidence as facts in other cases.

As pointed out in appellant's brief, the necessary elements to prove and establish the existence of an "informal" marriage are: (1) the mutual consent of the parties in the present tense, (2) followed by the mutual assumption of the marital rights, duties and obligations.

Under those considerations the trial court concluded that no marriage had been proven. The following are a portion of various evidentiary facts which support the trial court's findings of fact, conclusions of law and judgment:

(1) That the expenses of the home, including food and utilities, were all paid by Melvin from his separate funds or from partnership funds.

(2) That appellant's personal needs were provided for through income she derived from the sale of eggs and poultry from a flock of chickens that Melvin had purchased for her.

(3) That during their entire relationship appellant continued to maintain her personal post office box in the name of Harriet Abdalla, at Wagner, South Dakota; that she sold all of her eggs and poultry under the name of Harriet Abdalla; that she deposited all monies into a checking account in the name of Harriet Abdalla, upon which all checks were written and endorsed in said name.

(4) That all of her medical records listed her name as Harriet Abdalla.

(5) That on April 19, 1973, appellant admitted herself to a hospital in Omaha declaring herself to be a single person.

(6) That appellant made applications, under oath, for social security supplements under the name of Harriet Abdalla, stating that she was a single person.

(7) That two weeks before Melvin's death appellant signed his admission to a hospital under her name of Harriet Abdalla, listing her relationship to him as a "friend."

---

* Amended by 1959 S.D.Sess.L. Ch. 50, abrogating common-law marriage. The statute now appears as SDCL 25–1–1.

(8) That Melvin never discussed his property or income with appellant and that she never participated in any transactions in the sale or mortgage of property.

(9) That appellant was not authorized to write checks on the same account as Melvin and that when she was shopping for groceries she would receive a check from him made payable to the merchant. She was accordingly required to account for all monies spent by her.

(10) That Melvin always filed his income tax returns as a single person and did not claim appellant as an exemption. Further, Melvin, on the personal property assessment forms, listed himself as a single person.

(11) That Melvin listed himself as a single person on his application for social security benefits in 1974.

Under the guidelines previously established by this Court in the cases of *In re Erickson's Estate*, 75 S.D. 345, 64 N.W.2d 316 (1954); *Agnew v. Agnew*, 58 S.D. 164, 235 N.W. 644 (1931); and *In re Svendsen's Estate*, 37 S.D. 353, 158 N.W. 410 (1916), the trial court was well within its appropriate bounds in finding that no marriage existed. Accordingly, its holding is not clearly erroneous.

The judgment is affirmed.

All the Justices concur.

MILLER, Circuit Judge, sitting for MORGAN, J., disqualified.